OPINION OF THE COURT — by the
Has. EDWARD TURNER.
In this case, we have been furnished with an elaborate and able report ofthe judge who presided at the trial of the cause in the Claiborne Circuit Court, (which we here insert.)
This report is so full, and the subject placed in a view so perspicuous, that there is nothing. left for this court, but to give the case due consideration. After mature reflection, and a careful examination of the authorities cited in the report, I concur entirely with the opinion of the court below, and with the principles and reasons therein contained.
The judgment of the court below is therefore affirmed.
Judges Black and Winchester concur.
REPORT — by
Hon, JUDGE CHILD.
Appeal from the Circuit Court of Claiborne County.
As the decision under consideration in this case was made on the circuit by the judge of the first district, by Art. 5. Sec. 2. of the constitution, it becomes my duty to reporfto the supreme court, the reasons upon which that opinion was founded.
This was not a hasty inconsiderate decision made in the hurry of business at nisi prius. On the contrary, it was made under all the advantages that an elaborate research of six months could bestow, surrounded with complete libraries, and with ample time for thought and reflection.
The case is an action of detinue for a runaway slave, by the original owner against the vendee at sheriff’s sale. The single point propounded for investigation and decision fully appears in the bill of exceptions which is made a part of the record.
The cause was considered by the circuit court in three aspects..
*294 1. Upon the strength of decided cases in point, and the weight of authority to be found in analogous decisions.
2. As a vexed question, to be determined upon the reasons of the case, with a view to public policy, and the state of society where the rule was to operate, as law hereafter, in similar cases.
3. As a new question, and difficult, when considered with a view to the past, present and 'future sales of a similar nature in a slave holding state.
On the part of the plaintiff, it was insisted upon the first point, that this was a naked power, not coupled with an interest, and that in order to make the sale valid, every pre-requisite to the creation and execution of the power should precede its completion, and cited 4 Wheaton 77 97, Williams vs Peyton, 4 Cfanch 403, Steel’s exr. vs. Course, 9 Chranch 64, Parker vs. Rule’s lessee, and Sugden on powers, were relied on. LOn the part of the defendantit was contended that these cases in Wheaton and Cranch did not apply: because there, the decisions went entirely upon the ground of notice to the original proprietor, in whom the property remained until the sale had actually taken place — but in the case of a runaway slave, or an estray, so soon as the time of the first publication expired, according to law the property in the runaway slave vested in the county, the same as an estray at common law, vested in the king, or lord of the liberty — in Jacob 441, 1 Bl. C. 297, and cases there cited. It is said an estray is any valuable animal that is not wild, found within a lordship, and whose owner is not known; in which case if it be tried and proclaimed according to law, and not claimed by the owner within a year and a day, it belongs to the king, without even the equity of redemption: so, by our runaway slave laws, R. C. page 376 — 7 and estray laws, S.B. page 331, after being proclaimed according to law, in the case of a runaway slave, six months, and in the care of an estray twelve months, the slave, or estray, belongs to the county, to be sold according to law; and in both these cases the provisions of the statute are purely directory, and whether complied with, or not,'cannot effect the fitle of the vendor at such sale, without fraud, who, upon the strictest rule" of Caveat emptor, is only required to see the pre-requisites to the property vesting in the county, had been complied with, and preserve them as monuments of his title.
*295 In a much stronger case than the present, reported in 4 Dallas 220, the court say it has been urged that there is no proof that advertisements of the sale were posted up at public places; but if the sale was a fair one, we regard this as a very feeble objection. The act of making such advertisements is the duty of the sheriff; is matter merely directory, and should not affect the title oía. bonaJide purchaser; and I think the case would be a much harder one, if the original proprietor of a runaway slave could be permitted to disturb the title of a bona fide vendee at sheriffs sale, on account of irregularity in the sale, subsequent to the title vesting in the county.
If the amount of sale has been diminished for want of legal notice to purchasers, his remedy, if any, is against the officers, as in other cases.
In this case, all the pre-requisites to vesting the title in the county, were complied with, and the plaintiff’s claim is the amount of the proceeds of sale, after deducting costs, charges and commissions.
One reason why the cases from Wheaton and Cranch do not apply here, is because those cases were decided upon the ground that there was a defect of notice to the proprietor: here the proprietor had strict legal notice In every particular pre-requisite.
But the most striking feature which redeems this case from the operation of all the authorities cited by plaintiff, with reference to private special powers, is, that -in those cases, an actual sale in strict pursuance of the power is necessary to a divestiture of title; but in this case, the title is good before the pre-requisites of sale commenced.
When an execution is placed in the hands of the sheriff, it constitutes a general lien upon all the property of the defendant; and when a levy is actually made, the property is in the sheriff pro tanto, for all the purposes of sale to satisfy’ the execution. And in such cases, the law protects bo-na fide purchasers without fraud, although the sheriff may render himself liable, for misconduct.
In accordance with this doctrine, it is laid down in 2 Bacon 741 (a) if upon his judgment the plaintiff takes out a writ of fieri facias, and thereupon the sheriffsells a term for years to a strange'r, and the judgment is after-wards reversed, the defendant shall only be restored to the money for which the term was sold, and not the term itself; for by the writ, the sheriff had authority to sell, and if the sale may be avoided, afterwards,, few *296 would be willing to purchase under eiecution, which would render writs of execution of no effect. 2nd. Although this'doetrine contemplates the reversal of a judgment, and the subversion of the authority by virtue of which the execution issued, yet, in order to protect bona fide purchasers and grant titles, the sale under such circumstances wilfbe heldua&'d.
Again, in the case Goodyire vs. Price, Cro. page 246, the question was moved, whether, (on the reversal of a judgment for error, under which, by writ of degit, alease for years of tithes had been delivered to plaintiff, in satisfaction of his debí,) the party should be restored to the lease itself, or the value for which the sheriff had delivered it. The court unanimously determined that the lease should be restored, for say they: “ there is a difference between the delivery upon an eligit to the party himself, and a sale to a stranger upon a fieri facias, for the fieri facias gives authority to the sheriff to sell, wherefore, when he sells a term to a- stranger, (although the execution be reversed,) yet he shall not, by virtue thereof, be restored to the term, but to the moneys, because he becomes duly thereto, by act of sale.”
In unison with these authorities was the determination of Judge Spencer, in the suit Sandford vs. Roosa, 12 John.Rep. 162. That a sale of lands even on a junior execution was good, and the court remarked: “ the only remedy the one whose execution was first delivered has, is by action against the sheriff.” Notwithstanding in this instance, the property sold was bound and subject to the elder execution, yef, the sale thereof, under the junior executions was pronounced legal and valid, doubtless on considerations of public policy and expediency. If a sale of real property or lands, under such circumstances, conveys a good title to the purchaser, (a fortiori,) a ■disposition of personal estate, under like circumstances, will vest an indisputable title in the vendee.
In the case under consideration, by the expiration of six months, and due publication made, during that period of the apprehension, incarceration and description of the slave in controversy, as. required by the statute, the absolute title to him (analogously to the doctrine of estrays) vested in the county. If this conclusion be undeniable, the plaintiff then, (it follows irresistably) cannot maintain this action though the sale were void. The statute having divested him of the property, his right of action is gone *297 and in such cases the maxim of iaw is “potior est conditio defendentis.”
The statute provides on the subject of runaway slaves, that an advertisement describing the person, &c. inserted in some public newspaper, for the space of six months, and no owner having claimed, and proved his right thereto, at or before the expiration of six months, it shall be lawful for the sheriff to sell, &c. — On an observance of these pre-requisites mentioned, an absolute power accrues to the sheriff to sell, and with regard to authority, his situation is the same as if acting under the sanction of a judgment of a court of record: he is equally empowered by the one, as by the other, and those provisions of the statute, (which prescribe the terms of sale to the officer, whether under execution, or a runaway slave, under the statute,) are purely directory as before contended, and should any of the minutiae be omitted by the sheriff, it will not invalidate the sale, but, if it sell for a less amount, on account of such omission, indemnification may be obtained upon his official responsibility.
The principles here contended for, are recognised and established by an authority, or case in 2 Bibb. 402; (202). This case was as entirely analogous to the one under consideration. It was an action for the recovery of slaves, &c. In 2 Bay, is also a case in point.
Such are the reasons, and such the authorities upon which the decision below was founded. If a runaway slave be considered in the light of an estray — then the original proprietor loses his title under the six months’ advertisement and proclamation, and he must then rely upon the purchase money; or go upon the officer for damages. And in the second place, if it be lawful for the sheriff to sell on the expiration of six months; the •requisitions of the statute as to the manner of sale, are purely directory, and the vendee, without fraud, is protected in his title against the owner, where remedy is the same as in other cases where the power to sell accrues by operation of law.
As to the other consideration; if this is to be considered a new or vexed question, or as the English judges sometimes term it, an integral point, I believe the gentlemen of the bar, as well as the court, are unanimous in the opinion, that the judgment ought to be affirmed; it is therefore neither necessary nor expedient to discuss those points again.